IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **KATARZYNA KUSMIERZ**, *Individually and as Trustee of the VN Trust* | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Case No.: RWT 10-cv-2543 |
| **DAGMARA NAPIORKOWSKI** *also known as* **DAGMARA BOBIENI** | * * * * | |
| Defendant. | * * | |

## MEMORANDUM OPINION

On September 14, 2010, Plaintiff, Katarzyna Kusmierz, as an individual and in her capacity as Trustee of the VN Trust, filed a complaint against Defendant, Dagmara Napiorkowski, a/k/a Dagmara Bobieni, alleging that Defendant had written and published two letters defaming Plaintiff. For the reasons discussed below, this Court will grant Defendant's Motion to Dismiss for lack of personal jurisdiction.

### Background

Plaintiff, a Maryland resident, is the President of US Pharmacia International, Inc. and its associated affiliate companies (collectively, the "USP Group"). *See* ECF No. 1 ¶ 6. The USP Group is primarily engaged in the business of selling over the counter drugs in Poland and other Eastern European Countries. *See id*. ¶ 10. Plaintiff works at USP Group's United States headquarters located in Montgomery County, Maryland. *See id.* ¶ 19. Plaintiff is also the Trustee of the VN Trust, which currently holds primary ownership of the USP Group. *See id.* ¶ 7.

Defendant is a California resident and a citizen of both Poland and the United States. *See* ECF No. 6 at 1. The Defendant was married to the founder of the USP Group, Wojsiech Napiorkowski, but the couple divorced prior to his death in 2006. *See* ECF No. 1 ¶ 9. In the aftermath of Napiorkowski's death, Defendant believed she was entitled to certain payments as a beneficiary under the VN Trust. *See* ECF No. 6 at 2. On September 15, 2009, Defendant sent copies of two letters to individuals associated with the VN Trust and the USP Group in which Defendant questioned Plaintiff's management of the trust. *See* ECF No. 1 ¶¶ 12, 15.

In the first letter, Defendant allegedly made the following statements regarding the Plaintiff:

a) Plaintiff "misled" Defendant, thereby inducing Defendant into signing the property settlement with Napiorkowski.

b) Plaintiff "as trustee of the VN Trust, have been and are personally responsible for liabilities arising from the agreement and for settlements and timely payment of benefits therein. [Plaintiff], however, took advantage of [Defendant's] trust, lack of knowledge and health problems to take everything away from me."

c) "[Defendant] was paid only a small fraction of what [she] was supposed to receive. The waiver of [Defendant's] rights to shares in US Pharmacia International, Inc., twenty per cent (20%) of the shares in Unilab, Inc. and one half (1/2) of US Pharmacia was conditional, i.e. it depended upon the fulfillment of the provisions of the agreement, which has not taken place."

*See id.* ¶ 12. In the second letter, which included the first letter as an attachment, Defendant allegedly made further disparaging claims against Plaintiff. *See id.* ¶¶ 15, 18. Specifically, the second letter contained the following statements:

a) I hold [Plaintiff], who used to be my husband's closest associate, mainly responsible for the current situation. I am sure that she did everything she could to deprive me of my due rights. As an example I would like to draw attention to the fact that pursuant to the division and separation agreement, I was supposed to receive USD 600,000 upon entering into this agreement. This amount was for the shares in Pharmacia International, Inc., twenty five per cent (25%) of the shares in Unilab, Inc. and one half (1/2) of US Pharmacia that I was entitled to. Not only is it obvious that this amount is significantly smaller than the true value of shares,

  the payment was not actually made to me in any case.

 b) There have been numerous such situations which demonstrate that [Plaintiff] used my husband's illness and my own problems for her own purposes.

 c) It became apparent after my husband's tragic death that all of his assets were formally transferred to the VN Trust, which in effect meant into the hands of [Plaintiff] who manages my late husband's inheritance as VN Trust's sole trustee. As a result, she is the only person who truly benefited from the agreement entered into between my husband and me because she assumed total control over the VN Trust.

 d) I want the court to look into [Plaintiff's] management of the VN Trust as the sole trustee because I am worried that the company's assets are being illegally wasted. I owe it to my late husband and all of the clients and employees of our company.

*See id.* ¶ 16.

On September 14, 2010, the Plaintiff, as an individual and in her capacity as Trustee of the VN Trust, filed suit in this Court alleging two counts: 1) Injurious Falsehood Amounting to Defamation and 2) Defamation. *See* ECF No. 1. Plaintiff argued that Defendant's letters are false, disparaging, and reflect poorly on Plaintiff's professional reputation and integrity. *See id.* ¶ 20. Plaintiff further asserted that both letters were sent to members of the VN Trust, former and existing Board Members of the USP Group, and former and existing employees and advisors of the USP Group, and that at least some of these individuals reside in Montgomery County, Maryland. *See id.* ¶¶ 18-19.

On April 18, 2011, Defendant filed a Motion to Dismiss, asserting lack of personal jurisdiction, lack of subject matter jurisdiction, failure to state a claim, lack of standing, improper forum, statute of limitations, and failure to join indispensable parties. *See* ECF No. 6. In arguing that the Court lacked personal jurisdiction over the claim, Defendant asserted that the letters were composed in Polish by Defendant's Polish lawyers, and the only copies ever published were those sent to the Plaintiff and to individuals in Poland. *See id.* at 2. Additionally,

Defendant claimed that she never had the letters translated into English, and neither she, nor anyone on her behalf, sent copies to anyone in Maryland. *See id*. at 6.

After a hearing on Defendant's motion held on December 15, 2011, this Court entered an order denying Defendant's motion in part as to the failure to join indispensable parties, service of process, and statute of limitations arguments. *See* ECF No. 16 at 1. The Court deferred ruling on the remaining issues, including the question of personal jurisdiction, and ordered Plaintiff to file a report providing the names and addresses of all the persons who allegedly received the letters in Maryland, with limited discovery allowed pertaining to those named individuals. *See id*. On January 9, 2012, Plaintiff filed a status report, stating that Mr. Joseph Howe of 26 Hesketh Street, Chevy Chase, Maryland 20815, was the sole recipient in Maryland of the letters in question. *See* ECF No. 17.

During discovery, Defendant learned that a letter was originally sent to Mr. Howe in Poland, and then forwarded to his law office in Washington, D.C. *See* ECF No. 18 at 2. Mr. Howe testified in his deposition that he received the letter in D.C., but never actually opened it, and personally returned the sealed envelope to Plaintiff. *See id.*

On April 23, 2012, Defendant filed a motion requesting a ruling on the remaining issues presented in the motion to dismiss. *See* ECF No. 18. Defendant contends that because Plaintiff was not able to produce any individuals in Maryland who had read the letters, Defendant has no contacts with the forum, and thus the Court lacks personal jurisdiction. *See id*. at 4-6. Plaintiff opposed the motion on May 11, 2012. In her response, Plaintiff notes that Defendant was engaged in civil suits against Plaintiff in in the Circuit Court for Montgomery County, Maryland, from May 2010 through May 2011. *See* ECF No. 19 at 4. Plaintiff asserts that Defendant's participation in the state court lawsuits establishes the minimum contacts required for personal

4

jurisdiction. *See id*. Plaintiff further argues that personal jurisdiction is proper because Defendant's letters were intended to harm the Plaintiff in her professional capacities in Maryland. *See id*. at 6. Defendant filed a reply on May 25, 2012, and the motion is ripe for adjudication. *See* ECF NO. 20.

## Discussion

### I.      General and Specific Personal Jurisdiction

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993)). In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan*, 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

A federal district court may exercise personal jurisdiction over a nonresident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co*., 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland law permits long-arm jurisdiction to the fullest extent permitted by the limits of constitutional due process. *See id.* The minimum contacts test is applied to evaluate whether constitutional due process exists. *See Stover v. O'Connell Assocs*., 84 F.3d 132, 136 (4th Cir.1996). If a party "purposefully avails itself of the privilege of conducting activities within" Maryland, "creat[ing] a substantial connection between" itself and

Maryland, then such "in-state activity creates certain minimum contacts [with Maryland] such that maintenance of the suit [here] does not offend "traditional notions of fair play and substantial justice." *Id.*

Once minimum contacts with a forum are established, a court may exercise either general or specific jurisdiction. *See Ohio Learning Centers, LLC v. Sylvan Learning, Inc.*, 2012 WL 1416905, *2 (D. Md. 2012). When the basis for the suit arises out of the nonresident defendant's purposeful contacts with the forum state, specific jurisdiction may exist. *See Carefirst*, 334 F.3d at 397. To determine whether specific jurisdiction exists, courts will consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397 (internal quotation marks and citation omitted). General jurisdiction may exist even in the absence of specific jurisdiction if a nonresident defendant maintains "continuous and systematic" contacts, unrelated to the subject of the suit, with the forum state. *Id.* (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

**II.   Defendant is Subject to Neither Specific nor General Personal Jurisdiction in Maryland**

Plaintiff alleges that Defendant is subject to both specific and general jurisdiction in Maryland. *See* ECF No. 19 at 5-6. Plaintiff maintains that Defendant established minimum contacts with the forum state through her distribution of the supposedly defamatory letters to at least one individual in Maryland, and through her participation in a separate but related suit between the parties in Montgomery County, Maryland. *See id.* at 3, 6-7. According to Plaintiff, Defendant's mailing of the letters gives rise to specific jurisdiction, and her engagement in the local lawsuit is sufficient contact with the forum to establish general jurisdiction. *See id.*

Under the "effects" test, courts may assert specific jurisdiction over a nonresident defendant if the plaintiff can establish that the defendant intentionally targeted her actions toward the forum, with knowledge that the brunt of the harm would be felt in the forum state. *See Carefirst*, 334 F.3d at 397-98. The Fourth Circuit has interpreted the "effects" test narrowly. *See Young v. New Haven Advocate,* 315 F.3d 256, 263 (4th Cir. 2002); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). Jurisdiction over a nonresident defendant turns on "the defendant's own contacts with the state," not simply whether the plaintiff feels the alleged injury in the forum. *ESAB Group,* 126 F.3d at 626 (citing *Calder,* 465 U.S. at 789). Otherwise, jurisdiction would always "[be] appropriate in a plaintiff's home state, for the plaintiff *always* feels the impact of the harm there." *Id.*

In *Young*, the Fourth Circuit examined the "effects" test within the defamation context. 315 F.3d at 258-59. There, a prison warden in Virginia sued two Connecticut newspapers in Virginia, alleging defamation arising from articles posted on the newspapers' website. *See id*. at 259. The warden argued that the newspapers posted the allegedly defamatory articles knowing that the warden was a Virginia resident, that the article would be accessible in Virginia, and the primary effects of the statements in the article would be felt in Virginia. *See id*. at 261-62. In rejecting the warden's argument, the court emphasized that accessibility and potential impact in a forum are insufficient grounds upon which to base specific jurisdiction. *See id*. at 263. The newspapers' websites were geared toward Connecticut audiences and the newspapers never manifested an intent to target Virginia readers. *See id*. at 263-64. Thus, the court determined that the newspapers lacked sufficient minimum contacts with Virginia to permit an exercise of specific jurisdiction. *See id*. at 264.

Here, Plaintiff similarly has failed to establish that Defendant's conduct was directed at

Maryland. Plaintiff cannot show that Defendant sent any copies of the letters to Maryland residents, and Plaintiff has failed to demonstrate that the Defendant intentionally directed her conduct at Maryland. Defendant's Polish lawyers drafted the letters in Polish and sent the letters to individuals residing in Poland. Although the letters discussed Plaintiff and some of her actions in Maryland, there is no indication that Defendant intended for the letters to reach any Maryland residents. Thus, Defendant's distribution of the letters is not enough to establish specific jurisdiction.

Plaintiff also relies on Defendant's involvement in separate causes of action against the Plaintiff in the Circuit Court for Montgomery County as a basis for specific jurisdiction. *See* ECF No. 19 at 6. But Plaintiff fails to mention that both of Defendant's claims were counterclaims in response to actions brought by the Plaintiff. *See* ECF No. 20.[1] Plaintiff even obtained an order in one of the actions prohibiting Defendant from bringing related claims in any court other than the Circuit Court of Montgomery County, Maryland. *See* ECF No. 20, Ex. 3.

Participation in a previous action in the forum does not automatically warrant the exercise of personal jurisdiction over a nonresident party in a subsequent action. *See Gannon v. Flood*, 2008 WL 905982, at *3 (S.D. Fla. 2008) (opting not to object to jurisdiction in a previous suit does not foreclose objecting to jurisdiction in later action); *Toshiba Int'l Corp. v. Fritz*, 993 F. Supp. 571, 573 (S.D. Texas 1998) (filing a third-party complaint against the plaintiff in a previous action does not subject defendant to personal jurisdiction in a subsequent action). "A current defendant's prior decision to bring a suit in [the forum] should not act indefinitely as a sword of Damocles hanging perilously over the head of that defendant if she later challenges

---

[1] Plaintiff filed the first suit against Defendant regarding Defendant's divorce case with Wojsiech Napiorkowski, claiming that Maryland retained continuing jurisdiction under the divorce judgment. *See* ECF No. 20, Ex. 1. The second action initiated was an *in rem* proceeding brought by Plaintiff to argue the validity of Defendant's interest in the VN Trust. *See id*. Ex. 2.

jurisdiction in a separate suit." *Gibbons v. Brown*, 716 So.2d 868, 870 (Dist. Ct. App. Fl. 1998). Here, Defendant's filing of counterclaims in Maryland does not foreclose her from objecting to personal jurisdiction in the instant suit. Plaintiff has proved no legitimate connections between the Defendant and the forum beyond Defendant's responsive pleadings in the Montgomery County Court litigation. Therefore, Defendant has failed to demonstrate that this Court has specific jurisdiction over the Defendant.

The Court is also not persuaded by Plaintiff's claims that Defendant's involvement with the state court actions gives rise to general jurisdiction. When a defendant's contacts with a forum state are not the basis for the suit, jurisdiction "must arise from the defendant's general, more persistent, but unrelated contacts with the State." *ALS Scan,* 293 F.3d at 712. In fact, "the threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *Id*. at 715 (internal quotation marks omitted). For instance, in *Keeton v. Hustler Magazine, Inc.,* the Court noted that sales in New Hampshire of 10,000 to 15,000 copies per month of a magazine "may not be so substantial as to support jurisdiction over a cause of action unrelated to those activities." 465 U.S. 770, 774 (1984).

Here, Defendant's contacts with the forum fall far short of the "continuous and systematic" requirement needed to assert general jurisdiction. Defendant was engaged in two causes of action in Maryland for roughly a year, both of which were initiated by the Plaintiff. Such limited contacts hardly meet the threshold required for general jurisdiction. *See Virgin Health Corp. v. Virgin Enterprises Ltd.*, 393 Fed.Appx. 623, 626 (11th Cir. 2010) (holding that the defendant's filing of a claim in the forum several years prior does not establish general jurisdiction). Thus, the Court concludes that Defendant's contacts with the forum were

insufficient to establish general jurisdiction.[2]

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted, and Defendant's motion for a ruling will be denied as moot. A separate order follows.


Date: February 25, 2013                                                          /s/
                                                                   ROGER W. TITUS
                                                          UNITED STATES DISTRICT JUDGE

---

[2] In a responsive brief, Plaintiff sought leave to amend the complaint, and requested that the Court transfer venue if the Court did not exercise personal jurisdiction over the Defendant. *See* ECF No. 19. The Court declines to consider these requests because they were not made in the form of a motion pursuant to Federal Rule of Civil Procedure 7. *Cf. Willecke v. Kozel*, 395 Fed. Appx. 160, 168 (6th Cir. 2010) (request for leave to amend in brief opposing summary judgment did not constitute motion to amend); *Boynton v. Headwaters, Inc.*, 2010 WL 2991056, at *1 n. 1 (W.D. Tenn. July 27, 2010) (requests for affirmative relief disregarded when made in responsive pleading rather than motion).